Okay. Thank you. May it please the court. Counsel. Good afternoon. Your honors. I'm Carrie Bryson from the Office of the State Appellate Defender on behalf of Petitioner Terrence Haynes in this case. This case involves a wrongful conviction. I know when we hear the phrase wrongful conviction, we think, oh, we got the wrong guy. It's not that sort of a wrongful conviction. There's been no question all along in this case that Terrence Haynes is the individual who shot Cesar Murrell on the dating question resulting in Murrell's death. The question has been whether or not that was justified shooting. The case under the theory that Terrence shot an unarmed man. Marcus Hammond's testimony was a linchpin of that theory at trial. And Marcus Hammond has now come forward and said that that's not what happened. That he gave false testimony at trial, that that false testimony was induced by the prosecutor who was his cousin, who persuaded him to give false testimony, and that indeed Cesar Murrell did have a gun. And the false testimony he gave was that Murrell didn't have a gun. And this court previously, I believe in the prior opinion from this court, found that that was extremely damaging testimony to the self-defense claim in this case. We now have not just an affidavit from Marcus Hammond, but we've been through a third stage evidentiary hearing where Marcus Hammond testified that Cesar Murrell did in fact have a gun. Other witnesses testified, and they were not witnesses who were caught at the trial, that Cesar Murrell did in fact have a gun. But they were witnesses who came forward at the time? Two of the witnesses gave statements to the police at the time. Gary Hammond Jr. and Darryl Haynes had given police statements at the time. They weren't called as trial witnesses. It was the subject of an earlier complaint of ineffective assistance of counsel that was heard in the trial court and also came before this court. Those two witnesses. There were two others besides Marcus Hammond, Jackie Speed, who had not given a police statement and not been questioned by the police. She had been on the corner. This shooting happened on the porch of a house. She had been on the corner, hadn't seen the shooting itself, but had her statement and her testimony at the evidentiary hearing says she saw Cesar Murrell as he was approaching the area. She saw him lift his shirt and show that he had a gun. The other witness is Deborah Williams, who lived around the corner. Seems nobody knew about her at the time. She definitely wasn't talked to by the police. Has newly come forward and said Murrell was at her house with her husband prior to the incident. Said I'm going around the corner to get my money and showed that he had a gun. So we have multiple witnesses, not just Marcus Hammond, but multiple witnesses corroborating now that there was in fact a gun in the possession of the shooting victim in this case. This court has also in its prior opinion said that such testimony would be highly relevant. And again, we have it from multiple sources now, highly relevant to a claim of self-defense, regardless of whether the gun was in Cesar Murrell's hand or on his person, that that particular distinction would be a matter for the trier of fact to consider. And what we need is to get this testimony before the trier of fact. And the only way we're going to be able to do that is if this court grants Terrence Haynes a new trial. In the trial, seeking a new trial. Of course, third stage evidentiary hearing is his burden to show by preponderance of the evidence a substantial violation of constitutional right. He met that burden here, but the trial court denied the petition. And so we're here before the appellate court arguing that the trial court's denial was in fact manifestly erroneous. Typically, the trial court's given great deference. That's not a rubber stamp. That doesn't mean this court simply puts its stamp of authority on what the trial court did. We have to look at the basis for the decision and was it correct or was it not. I've talked about both of the claims in the brief and I'd like to talk about both of them here today, but I'd like to start by talking about the actual innocence claim first. So actual innocence has three components. Evidence has to be new, material, and not just cumulative and of such a nature that would probably change the result on a retrial. Those elements were met here. We talked a little about Marcus Hammond. He's new. Not a new witness, but his testimony is new because it has changed. And there is authority that recantation testimony can constitute newly discovered evidence. And here, the basis for that is, so he testified one way at trial, he's testifying to the opposite now, and he has explained the reason for the switch. So Terrence Haynes could not have produced his testimony in support of the conclusion that Cesar Morrell had a gun at trial because he was being influenced by the prosecution to testify in the manner that he did. Marcus Hammond is a credible witness. Recantation testimony obviously is viewed with some skepticism, but here everything corroborates his testimony. Every other eyewitness who has been talked to, who has been presented, says also that Cesar Morrell had a gun. That's consistent across the board. Even the assistant state's attorney who testified, the cousin of Marcus Hammond, was called to testify. There were two prosecuting attorneys in this case. Only one was called at the evidentiary hearing by the state. Even that assistant state's attorney said he didn't think all these witnesses were lying when they said Cesar Morrell had a gun. Yet the state prosecuted this case by repeatedly telling the trier of fact that Terrence Haynes shot Cesar Morrell, an unarmed man. So we have a shift here from what the trial theory was. Now even the trial prosecutor is saying he doesn't think they're lying. He thinks there was a gun. He just thinks there's a distinction between whether the gun was out or whether the gun was still in the waistband or in some place in between. Daryl Haynes and Gary Hammond Jr., the state has contested whether those are newly discovered witnesses. And that is, I'll admit, sort of a sticking point here because they were presented at the ineffective assistance of counsel claim. So even if this court isn't willing to view them as newly discovered, they corroborate Marcus Hammond. They're not irrelevant. They're witnesses who are available and they corroborate what Marcus Hammond is saying. Jackie Speed and Debra Williams, they weren't known at the time of trial. Their testimony is new. There were no police statements from them and they corroborate that Cesar Morrell had a gun, although they weren't directly eyewitnesses to the shooting. The second element about whether the evidence is material and not merely cumulative, the state hasn't offered any argument on that point in response to our brief and our arguments in this court. But it's worth pointing out this court's prior opinion essentially says it would be highly relevant. It would be material. It is a change. It would directly corroborate Terrence Haynes' testimony, which has been the same all along since the time he first gave a statement to the police that Cesar Morrell was in fact armed at the time he was approaching him. And would it probably change the result on a retrial? So we don't need conclusive proof. We're not before this court asking for an outright reversal. We can't. We're before this court asking for a new trial. And the question is whether the new evidence should be considered assessed in context of the trial evidence. And whether or not, it doesn't even have to be more likely than not that a new result would come out. Just enough that it should be considered. The new evidence should be considered because it undermines confidence in the verdict that was reached at the trial. And that's definitely been established here. And this court's, again, this court's prior opinion supports that. Moving on to the perjury claim. Marcus Hammond testified at the trial. Of course he gave an affidavit. He gave an affidavit a long time ago. And this has been sort of a developing process affidavit that he's related to Michael Janieri, who was one of the trial prosecutors. That that relationship wasn't disclosed. That he was instructed by the prosecutors, although he had seen Cesar Murrell with a gun, he was instructed to say that there was only one gun. And that is, in fact, the testimony he gave at the trial. Now he's come forward and testified at the evidentiary hearing that, in fact, Cesar Murrell had a gun. As I've discussed, it's been corroborated by a number of Michael Janieri, the assistant state's attorney, also testified at that evidentiary hearing. And, of course, he testified he did not instruct Marcus Hammond to conceal testimony about there being a second gun. Frank Estrella, who was the first chair on the case, wasn't called at that hearing. So has he ever given a statement? No. There's no statement from him in the record in this case. No affidavit. No testimony. Now in this court, the state has said, well, he wasn't called because of a scheduling conflict. It's not borne out by the record. Maybe preliminarily there was an issue with scheduling. The hearing went on one day. At the end of the day, the state said they were going to call Mr. Estrella the next day. And the court said, we're not scheduled for tomorrow. So we'll have to get another date. And there was some discussion about confusion over the state thought that there was going to be a hearing the next day. There wasn't. The matter was being continued anyhow, I believe, for argument of the issues. At that point, though, the state said, we're just not going to call him. So they didn't ask for a continuance. There was no objection to any continuance. There was no effort to present Mr. Estrella's testimony. So we don't have it. He would be the most important person to hear from in this case on that question of what the trial prep involved, what he told this witness. And Marcus Hammond has maintained that it was Frank Estrella who was the state's attorney who told him not to testify that Cesar Morrell had a gun, as well as quarantined. And Mr. Gennari said that Mr. Estrella was the one who did all the questioning? Yeah, he said he did the questioning. They were both there during the witness prep. Frank Estrella was the one who decided which witnesses to call. Mr. Gennari said Frank Estrella was the one who decided not to relationship between Gennari and Marcus Hammond to the defense at the time of trial, which again, this court found would have been favorable evidence in a prior proceeding. So Frank Estrella was the one who had control of the case. Michael Gennari was second chair, essentially. Notably, so the trial court's ruling in this case, on the petition, she didn't make a finding that Michael Gennari was credible. There's no has reviewed it. It's about 10 pages recounting testimony from the evidentiary hearing. She doesn't make a finding that Michael Gennari is credible. Instead, the trial judge analyzed this under sort of a conflict of counsel type of analysis. She essentially applied the wrong legal analysis to this claim, which is the reason this court can not give as much deference to a trial court as it would normally because the trial court operated under a misapprehension of what the law was. But also her factual conclusion that Marcus Hammond wasn't credible simply is not borne out by the record. Without belaboring the point, he's highly corroborated by the other witnesses in this case about Susan Murrell having a gun. There's a relationship to the prosecutor that was purposefully concealed. It wasn't just a mistake that they didn't tell the defense that the prosecutor was guilty. These are things that undermine the state's witness credibility and support Marcus Hammond's credibility in this case. In this court's 2015 opinion, which I've mentioned a couple times, your honor said that while holding a gun might be factually different than having it on your person, it's highly relevant. The trier of facts should decide which way to be given to such evidence. Again, the only way that's going to happen is if this court reverses the denial of the post-conviction petition, reverses Terence Haynes' conviction, and remands this matter for a new trial. Thank you, your honors. Thank you, counsel. May it please the court, counsel, Assistant Attorney General Lindsay Payne on behalf of the people. After presiding over the original trial and the post-conviction evidentiary hearing, the circuit judge determined that the affidavits filed and the recantations of petitioner's witnesses were, quote, not credible or reliable or truthful. That determination was not manifestly erroneous. And the people in these proceedings have no burden to rebut petitioner's non-credible evidence. The burden is completely on petitioner in these proceedings. And so the people don't have to call Frank Estrella to win in these proceedings. There's been no allegation that Frank Estrella was ever alone with Marcus Hammond. Marcus admits that Michael Jennery was there every single time he was with Frank Estrella. So on the one hand, we have testimony from Marcus Hammond that the circuit judge determined was non-credible. Then we have testimony from Mike Jennery. The circuit judge doesn't have to make credibility determination there because already petitioner's failed to meet his burden. But nonetheless, we have testimony that from someone else who was in the room that what Marcus says happened never happened. If we look at Marcus's testimony, it is not the credible, consistent testimony that Marcus's original testimony was that he never saw Murrell with a gun. That what he saw was petitioner pull a gun out from behind his body, pull the slide on the top of the gun back until Marcus heard it click, aim the gun at Murrell and start firing. Then Marcus runs to the corner. When he reaches the corner, he stops, he looks back, he sees that Murrell has fallen down the stairs and standing over him, pointing the gun at Murrell's head. Marcus testified that his mother was with him when he gave his police statement. That's corroborated by his mother's signature on the statement and by the testimony of the officer. Flash forward to 2016, Marcus's new story at the evidentiary hearing was not only that Murrell had a gun on his person, but that Murrell pulled the gun and the petitioner shot him. That's a story that even petitioner has never told. That conflicts with petitioner's own testimony at the trial and the evidentiary hearing, significantly discrediting Marcus's recantation. What else do we have? Marcus claims that he told the police that Murrell had a gun, but they refused to include it in his statement. That he told prosecutors that Murrell had a gun and they told him to lie. That it was his illiterate father who was with him when he gave his statement, rather than his mother whose signature is on it. What does Marcus not say? Marcus doesn't claim that someone fed him the story about petitioner pulling back the slide on the semi-automatic handgun. He doesn't claim that someone fed him the story about petitioner standing over Murrell, pointing a gun at Murrell's head. He has not, petitioner has not presented corroboration in the form of one of Marcus's parents. Marcus claimed at the evidentiary hearing, in contradiction to what Michael Jennery said, that Marcus's mother was with him when the prosecutors told him to lie. That his mother was sitting right next to him when prosecutors told him to lie on the stand. That's a serious allegation and one would think that his mother could corroborate that today if it were true. But petitioner has not called her and instead we have Marcus with significant inconsistencies, significant things that don't make sense about his statement and he today is a convicted felon. I'm sorry I have a question. I'm a little confused about one thing that you said. Yes. I thought that the signature of the mother was what he had told to the police officer, not what he had told to the prosecutor. Right, the signature is on the police statement. You said that the mother was there when he was talking to the prosecutor. And that was based on Marcus's testimony at the evidentiary hearing. He was asked on the stand whether a parent was with him when he spoke with Frank Estrella and Mike was with me the whole time. Michael Jennery says no, no parent was with him. We generally separate children from their parents when we're preparing them to testify. And so if Marcus says his mother was there when prosecutors told him lie on the witness stand, then let's bring in his mother. But that's petitioner's burden to do so and we didn't hear from her. We have Gary Hammond Jr. who is not new for purposes of actual innocence and this court has already held that defense counsel was not ineffective for failing to call Gary Jr. Now Gary Jr. has always said that from his vantage point, he couldn't see what Murrell was doing with his hands or whether he had a gun before the shooting, but that after petitioner shot Murrell, he saw Murrell with a gun. But there's a few interesting aspects of Gary Jr.'s statements. Gary Jr., a couple months after the murder, was in the Ford County Jail and he summoned police officers to the jail saying he wanted to give additional information. That additional information is in his second police statement. One piece of information was that it was Gary Jr.'s semi-automatic handgun that petitioner used to shoot Murrell. Another is that Gary was very clear that Murrell's gun was not visible prior to being shot by petitioner, that it was in his waistband under a jersey, Gary didn't see it, he didn't think it was visible, and that after petitioner shot Murrell and Murrell fell down the stairs, then Murrell lifted his shirt and was going for the gun, at which point Daryl Haynes started shouting, he's got a gun, he's got a gun. That testimony strongly suggests that if Murrell had a gun, nobody knew about it until after petitioner had shot Murrell. Additionally, Gary Hammond's second police statement corroborated Marcus Hammond's original trial testimony that after shooting Murrell twice, petitioner stood over him pointing the gun at Murrell's head. We also have Daryl Haynes, petitioner's cousin, who's not new evidence for actual innocence and is also a convicted murderer at this time. Daryl's original police statement said that Murrell had a gun but that it remained in his waistband until after petitioner shot Murrell. Then at the evidentiary hearing in this case, Daryl testified, similar to Marcus Hammond, that Murrell had a gun but pulled it on petitioner before petitioner shot him. So again, we have a case that's actually contradicting petitioner's account of the events, which tends to discredit that witness's testimony. I'd have to disagree with my opponent about whether Jackie Speed is new evidence. Jackie Speed was known to defendant at the time of the trial. He actually alleged immediately after trial that counsel was ineffective for calling Jackie Speed in addition to Gary and Daryl and other witnesses, and she was part of the Krankel proceedings. So she is absolutely not new evidence for purposes of actual innocence. The only witness that could be considered new for purposes of actual innocence is Deborah Williams, the neighbor who says that Murrell was at her house shortly before the shooting and he showed her that he had a gun. But if anything, again, her testimony corroborates the state's version of events that if Murrell had a gun, it was not visible because Deborah Williams said that Murrell had to lift up his shirt and show her the gun before he went over to the house. So given all of the bias and the inconsistencies over the years with these statements, it cannot be said that the circuit judge who had the opportunity to observe all of these witnesses committed manifest error. But I'd like to perhaps most importantly, petitioner's own testimony because petitioner has repeatedly undercut his own self-defense argument. Petitioner testified at trial that Murrell had a gun, but it stayed in Murrell's waistband until after petitioner had shot him and after Murrell fell down the stairs. Petitioner gave conflicting testimony as to whether he feared for his life at the time he shot him. And I think that's part of petitioner's credibility when he's telling the jury sometimes he's saying I was in fear, sometimes he's saying I wasn't. Petitioner's version of the events leading up to the shooting were nonsensical. He claimed that Murrell had beat him up in a footlocker a week or so before the shooting, but that he had no idea what this feud with Murrell was about and that it didn't bother him at all that Murrell had beat him up in this which doesn't make any sense and also petitioner knows what the feud was about because he told Sergeant Passwater all about it upon his arrest. So again, he's not behaving credibly in front of the jury. Petitioner had the ability to preserve Murrell's gun. He didn't do that. He fled the state shortly after the shooting. The circuit judge here, again, contrary to petitioner's assertions, did a very thorough job and personally questioned petitioner on the stand at the post-conviction evidentiary hearing. And she went through the seconds prior to the shooting. And what petitioner testified to was that the moment he pulled the trigger that Murrell was just starting to pull his gun from his waistband, but that it remained in his waistband. So under petitioner's own version of events, you have two armed men. Petitioner pulls a gun, aims it, shoots Murrell two times without Murrell ever pulling his gun. And petitioner admits that he could have avoided shooting Murrell, that he had options to remove himself from the situation without shooting Murrell, that he didn't take. That simply doesn't meet the definition of self-defense in the state of Illinois, even if you credit it. Petitioner's testimony, which the circuit judge did not. And I point the court to page 42 of petitioner's own opening brief, where he cites People v. Lewis for the proposition that self-defense requires the defendant believe that the deadly force is necessary to avert the threat. And we have petitioner sitting on the stand under oath saying it wasn't necessary. He had other options. Therefore, petitioner has failed to meet his burden. The circuit court's determination was not manifestly erroneous. And unless the court has any further questions, we would ask that the court refer. I'd like to touch briefly on a few points. The question about whether or not the petitioner should have called Marcus Hammond's mother to corroborate, the question about who was with him at the police statement or who was with him during trial prep, we don't even know if Marcus' mother is still alive. There's nothing in the record that suggests she was even an available witness. Going off the record here, when they suggest she should have been called, we don't even know on this record that she could have been called. And I would suggest it's a collateral point. What this case is really about is the state prosecuted Terrence Haynes under the gun. Everything we're talking about here today, all of the discrepancies in the witness testimony, the differences in the testimony, it's all different details about Cesar Merle having a gun. Not that he didn't have a gun ever, but he had it. Where was it at the time? That's all of what we're talking about here today and that is none of what was put before the trier of fact in this case. This theory that was repeated at least a hundred times in this case was that Terrence Haynes shot an unarmed man. The prosecutor who testified at the evidentiary hearing in this case doesn't even believe that himself. This court has said, viewing the totality of the circumstances, I'm sorry, whether or not he had a gun on his person or in his hand, either of those things is highly relevant to the self-defense claim here and should be put before the trier of fact because the questions about when it was out, where it was exactly, those go to the weight to be given to that evidence. And the assertion that Terrence Haynes' own testimony undercuts his self-defense claim is not borne out by the state of the law in this case. Self-defense, a imminent death or great bodily harm. The use of force is necessary to prevent imminent death or great bodily harm. So he doesn't have to fear for his life. That's not a requirement under the law in Illinois. Death or great bodily harm. The testimony that he gave at the trial that the state points to in their brief and that the trial judge pointed to in her order denying the post-conviction petition is one little segment of a question. Where exactly did he fear for his life? The fact of the matter is he doesn't even have to fear for his life. It's enough that he feared death, imminent death or great bodily harm at some point before he acted. He doesn't have to wait until the last possible second. The gun doesn't have to be out and pointing in his face before he can act with deadly force. But again, these are questions for the trier of fact. And the evidence that Cesar Moral was in fact armed that would have directly supported the claim of self-defense. And for that reason, I'm asking this court to reverse the denial of the petition, reverse the conviction and send this back for a new trial where that evidence can be presented. Thank you. Thank you. Well, we'll take this matter under advisement and render a decision with dispatch. Now we'll take a recess until the next call. Thank you.